## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

---

JAMES P.,[1]

                                          Plaintiff,

        v.

                                              3:18-CV-397(ATB)

NANCY A. BERRYHILL,[2]

                                        Defendant.

---

HOWARD D. OLINSKY, ESQ., for Plaintiff
BENIL ABRAHAM, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

### MEMORANDUM-DECISION and ORDER

This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1, and the consent of the parties. (Dkt. Nos. 4, 5).

## I.    PROCEDURAL HISTORY

Plaintiff filed an application for Disability Income Benefits ("DIB") and Supplemental Security Income ("SSI"), alleging disability beginning August 27, 2002.

---

[1] In accordance with recent guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in June 2018 in order to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify the plaintiff using only his first name and last initial.

[2] Andrew M. Saul became the Commissioner of Social Security on June 17, 2019. The Clerk of Court is respectfully directed to amend the caption to reflect the proper defendant.

(Administrative Transcript ("T") 11, 187, 194, 261).  The application was denied initially on January 30, 2015. (T. 103).  Plaintiff requested a hearing, which was held by video on May 31, 2017, before Administrative Law Judge ("ALJ") Kenneth Theurer. (T. 694-718).  At the hearing, plaintiff amended his alleged onset date to May 13, 2015. (T. 313, 696-97).  The ALJ then heard testimony from plaintiff and Vocational Expert ("VE") Josiah Pearson.  (T. 697-718).

In a decision dated July 10, 2017, the ALJ found that plaintiff was not disabled. (T. 8-10).  The ALJ's decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on February 2, 2018. (T. 1-4).

## II.    GENERALLY APPLICABLE LAW

### A.    Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ."  42 U.S.C. § 1382c(a)(3)(A).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

2

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that his impairment prevents him from performing his past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

## B.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). It must be "more than a scintilla" of evidence scattered throughout the

administrative record.  *Id.*  However, this standard is a very deferential standard of review " – even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision.  *Id*.  *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record.  *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) ("...we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony..."). However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III.  <u>FACTS</u>

As of the date of the administrative hearing, plaintiff was fifty-two years old.  (T. 187).  He resided in a one-story home with his two dogs.  (T. 700-01).  Plaintiff had a license and could drive, however he did not own a vehicle.  (T. 700).  He was a high school graduate.  (T. 701).

In 2002, plaintiff injured his back at work. His doctor subsequently restricted him to working four hours a day, with no continuous sitting or standing, and no repetitive bending. (T. 711). Since then, plaintiff has worked part-time at various auto part stores. (T. 702). At the time of the hearing, he was working approximately 4-5½ hours a day, five days a week. (T. 702-03). After four hours of work, plaintiff felt "quite sore." (T. 707). Plaintiff's employer provided him with a seat at the counter where he worked, so that plaintiff could alternate between sitting and standing in order to remain comfortable. (T. 708). He also had access to an aerobic mat, to stretch as needed. (T. 709).

Plaintiff testified that his low back pain prevented him from working full-time. (T. 703). He had not seen his orthopedist in the approximately seven years prior to the hearing, but was treating with his primary care physician. (T. 703-04). Plaintiff testified he was too young to have back surgery. (T. 709). He took various medications to address his pain, and he applied ice and heat every day after work. (T. 704-05, 710). He also utilized an inversion table and ultrasound unit. (T. 710-11).

Plaintiff could attend to his activities of daily living ("ADLs"), including dressing, showering, and bathing. (T. 705). He also cooked for himself, shopped for limited periods of time, and managed his own finances. (T. 705-06). Plaintiff took his dogs to a nearby off-leash park for exercise. (T. 706).

IV.   **THE ALJ'S DECISION**

The ALJ first found that plaintiff met the insured status requirement through December 31, 2018. (T. 13). The ALJ then determined that plaintiff had not engaged

in substantial gainful employment since May 13, 2015, the alleged onset date. *Id.*

At step two of the sequential analysis, the ALJ found that plaintiff had a severe impairment, namely a disorder of the back, that significantly limited his ability to perform basic work activities as required by SSRs 85-28 and 96-3p. (T. 14). The ALJ also found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a Listed Impairment at step three of the sequential analysis. (*Id.*). In making this decision, the ALJ considered Listing 1.04 (Disorders of the Spine). (*Id.*).

The ALJ then found that plaintiff had the residual functional capacity to perform less than light work, because

> while he can occasionally lift and carry twenty pounds, frequently lift and carry ten pounds, sit for up to six hours and stand or walk for approximately six hours in an eight hour day with normal breaks, he can only occasionally climb ramps or stairs, occasionally climb ladders and never climb ropes or scaffolding. The claimant can occasionally balance, stoop, kneel, crouch and crawl. The claimant will need to alternate three times per hour from a seated to a standing position or vice versa for five minutes while remaining on task.

(*Id.*). In making this RFC determination, the ALJ stated that he considered all of the plaintiff's symptoms, and the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence," based on the requirements of 20 C.F.R. §§ 404.1529 and 416.929. (*Id.*). Finally, the ALJ stated that he considered opinion evidence in accordance with the requirements of 20 C.F.R. §§ 404.1527 and 416.927. (*Id.*).

The ALJ also found that plaintiff's medically determinable impairments could

reasonably be expected to cause the alleged symptoms; however, the plaintiff's statements as to the intensity, persistence and limiting effects of those symptoms were not "entirely consistent with the medical evidence and other evidence in the record." (T. 15). The ALJ stated that his residual functional capacity assessment was supported by the opinion of the consultative examiner, the objective medical evidence of record, and plaintiff's ADLs. (T. 17).

After considering the evidence and plaintiff's RFC, the ALJ found at step four that plaintiff had no past relevant work. (*Id.*). The ALJ then turned to step five of the sequential analysis. The ALJ acknowledged that the plaintiff's ability to perform unskilled light work had been compromised by additional limitations. (T. 17-18). To determine the extent to which these limitations eroded the unskilled light occupation base, the ALJ considered the testimony from the VE. (T. 18, 712-17). Based on the ALJ's initial hypothetical, the VE testified that there were several jobs that existed in significant numbers which could be performed by a person of plaintiff's age, education and vocational background. (T. 18). The VE further testified that the sit-stand option set forth by the ALJ eroded the number of jobs in each category between 25-75%, however the ALJ found that the remaining number of jobs still constituted significant numbers in the national economy. (*Id.*). Thus, the ALJ found that plaintiff was not disabled. (*Id.*).

## V.    ISSUES IN CONTENTION

Plaintiff argues that the ALJ's RFC determination is "unsupported by substantial evidence and is the product of legal error[,]" insomuch as the ALJ failed to properly

evaluate the opinions from plaintiff's treating physician, and relied on the "vague opinion" of the consultative examiner. (Plaintiff's Brief ("Pl.'s Br.") at 1; Dkt. No. 14). Defendant argues that the ALJ's RFC determination is supported by substantial evidence. (Defendant's Brief ("Def.'s Br.") at 4-12; Dkt. No. 17). For the following reasons, the court agrees that substantial evidence supports the RFC for light work as modified by the ALJ.

## VI.  RFC/WEIGHING EVIDENCE/TREATING PHYSICIAN

### A.  Legal Standards

#### 1.  RFC

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . ." A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)); *Babcock v. Berryhill,* No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R.

§§ 404.1545, 416.945. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019); *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010). An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities. *Roat v. Barnhart,* 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010); *Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183, *Stephens v. Colvin,* 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7).

## 2.    Weighing Evidence/Treating Physician

In making a determination, the ALJ weighs all the evidence of record and carefully considers medical source opinions about any issue. SSR 96-5p, 1996 WL 374183, at *2-3 (1996). Under 20 C.F.R. §§ 404.1527(e) and 416.927(e), some issues are not "medical issues," but are "administrative findings." The responsibility for determining these issues belongs to the Commissioner. *See* SSR 96-5p, 1996 WL 374183, at *2. These issues include whether the plaintiff's impairments meet or equal a listed impairment; the plaintiff's RFC; how the vocational factors apply; and whether

the plaintiff is "disabled" under the Act. *Id.*

In evaluating medical opinions on issues that are reserved to the Commissioner, the ALJ must apply the factors listed in 20 C.F.R. §§ 404.1527(d) and 416.927(d). The ALJ must clearly state the legal rules that he applies and the weight that he accords the evidence considered. *Drysdale v. Colvin*, No. 14-CV-722, 2015 WL 3776382, at *2 (S.D.N.Y. June 16, 2015) (citing *Rivera v. Astrue*, No. 10 Civ. 4324, 2012 WL 3614323, at *8 (E.D.N.Y. Aug. 21, 2012) (citation omitted)).

"Although the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician, . . . the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record . . . ." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). If an ALJ decides not to give the treating source's records controlling weight, then he must explicitly consider the four *Burgess* factors: "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Estrella v. Berryhill*, 925 F.3d 90, 95-96 (2d Cir. 2019) (quoting *Burgess v. Astrue*, 537 F. 3d 117, 120 (2d Cir. 2008)). Should an ALJ assign less than controlling weight to a treating physician's opinion and fail to consider the above-mentioned factors, this is a procedural error. *Id.* at 96. It is impossible to conclude that the error is harmless unless a "searching review of the record . . . assures us that the substance of

the treating physician rule was not traversed." *Id.*

### B.    Analysis

Plaintiff argues that the ALJ misapplied the treating physician rule by failing to give controlling weight to Dr. Rule's opinions.  (Plt.'s Br. at 10).  The plaintiff further argues that the ALJ's RFC is not otherwise supported by substantial evidence; notwithstanding Dr. Jenouri's "vague" opinion, to which the ALJ afforded "great weight."  (*Id.* at 10-11).  The Commissioner contends that the ALJ properly relied on Dr. Jenouri's opinion, as it was consistent with other evidence of record and supported an RFC for light work.  (Def.'s Br. at 6-7).

The administrative record contains no formal opinions from a treating physician regarding plaintiff's functional limitations.  It does, however, contain a plethora of treatment notes from plaintiff's neurosurgeon, primary care providers, and pain management team.[3]  With respect to his back injury, plaintiff sought treatment from neurosurgeon Khalid Sethi, M.D. in 2008. (T. 370-71).  Dr. Sethi diagnosed plaintiff with discogenic mechanical low back pain, noting that plaintiff presented with "fairly good strength throughout . . . [and] no evidence of ongoing radiculopathy, cauda equina or conus symptomatology." (T. 367).  He further opined that plaintiff "really [didn't] have any focal myotomal weakness." (*Id.*).  Plaintiff went on to pursue conservative treatment with Dr. Sethi, including medical pain management and the use of an inversion table.  (T. 364-66).  In 2010, Dr. Sethi determined that plaintiff was not a surgical candidate.  (T. 363).  On January 20, 2011, Dr. Sethi examined plaintiff to

---

[3]The majority of the treatment notes of record predate plaintiff's alleged onset date, May 13, 2015, by several years.

find him with a steady gait and some mild muscle spasms on the left side that extended down the left lower extremity. (T. 362). Plaintiff was noted to be tight on straight leg raise at 30 degrees, with "good strength in plantar flexion, EHL, anterior tibialis, quadriceps, and hamstrings." (*Id.*). Dr. Sethi noted a "blunting sensation" in the S1 dermatome. (*Id.*). Lumbar MRI findings noted degenerative disc disease at L4-5 and 5-1. (T. 361). It does not appear that plaintiff treated with Dr. Sethi after 2011. Plaintiff did seek treatment with pain management between 2011 and 2013, along with physical therapy in 2012. (T. 493-501, 543-96, 597, 598-655).

In 2013, plaintiff established primary care at Bassett Medical Center ("BMC"). (T. 488). Plaintiff treated almost exclusively with nurse practitioner ("NP") Kenneth Demott, who saw plaintiff every three to six months for "workers' compensation visits." (T. 486, 488, 507, 509, 658, 662, 677, 682, 686, 691). Several workers' compensation forms were prepared contemporaneously with plaintiff's visits, assigning various[4] degrees of temporary impairment and work restrictions. The forms were co-signed by NP Demott and a "board authorized health care provider," namely physician Carlton Rule, M.D. or Aaron Harrison, D.O. The forms lack any opinion regarding plaintiff's functional limitations. (T. 657, 661, 665, 676, 681, 685, 690).

Despite plaintiff's contention to the contrary, Dr. Rule was not a treating

---

[4] *See* T. 656-67 (1/9/15 - percentage of temporary impairment "partial per neurosurgeon"); T. 660-61 (4/10/15 - percentage of temporary impairment 30% "per chart review from neurosurgery"); T. 664-65 (7/23/15 - percentage of temporary impairment 50%); T. 675-76 (3/4/16 - indicating plaintiff was 100% temporarily impaired); T. 680-81 (6/10/16 - percentage of temporary impairment 30% "per neurosurgery"); T. 684-85 (9/12/16 - percentage of temporary impairment 30%); T. 689-90 (1/30/17 - declining to assign any percentage of temporary impairment to plaintiff).

physician whose opinion was entitled to controlling weight. The Second Circuit has explained that the ALJ gives a treating physician controlling weight because of the "continuity of treatment he provides and the doctor/patient relationship he develops[.]" *Weathers v. Colvin,* No. 3:15-CV-575 (FJS), 2017 WL 177649, at *5 (N.D.N.Y. Jan. 17, 2017) (citing *Mongeur v. Heckler,* 722 F.2d at1039 n.2). "Across multiple districts in this Circuit, courts have consistently held that a physician who examines a patient 1–3 times during a limited period does not typically have the kind of relationship that qualifies as a treating physician relationship for the purposes of the social security regulations." *Pritchett v. Berryhill*, No. 17-CV-719, 2018 WL 3045096, at *5 (W.D.N.Y. June 20, 2018) (listing cases).

In this case, Dr. Rule performed one examination of plaintiff over the course of three years. On July 27, 2015, Dr. Rule saw plaintiff for a "Workman's Comp [sic] issue." (T. 666). Upon examination, he noted that plaintiff exhibited tenderness in his low back "around L2-3 bilaterally." (*Id.*). Dr. Rule further noted that plaintiff displayed normal reflexes and coordination, with abnormal muscle tone and "some apparent weakness in the left lower leg." (*Id.*). Dr. Rule ordered a follow up MRI and opined that plaintiff "should reduce work hours to 4 hours per day until seen again." (T. 666-68). Plaintiff was not seen again until March 4, 2016, when he met with NP Demott "for [a] Worker's Compensation visit." (T. 677). Dr. Rule did not otherwise examine plaintiff through the date of the ALJ's July 10, 2017 opinion.

In addition to his limited treatment relationship with plaintiff, Dr. Rule failed to provide any opinion assessing plaintiff's functional limitations, or how his limitations

impacted his ability to perform basic work-related activities. The "opinions" relied on by plaintiff in his brief are limited to the forms co-signed[5] by Dr. Rule as an authorized physician in the context of the workers' compensation claim system. (T. 656-57, 661-62, 664-65, 675-76, 680-81). Upon analyzing these opinions, the ALJ afforded them "little weight," noting that they assigned degrees of disability without providing functional limitations. (T. 17). Moreover, in assigning Dr. Rule's opinions limited weight, the ALJ properly considered that they were based on workers' compensation standards, and "speak to an issue which is reserved for the Commissioner of Social Security." *See Ackley v. Colvin,* No. 13-CV-6656, 2015 WL 1915133, at *5 (W.D.N.Y. Apr. 27, 2015) (citing *Crowe v. Comm'r*, No. 6:01-CV-1579 (GLS), 2004 WL 1689758, at *3 (N.D.N.Y. 2004) (ALJ not required to adopt treating physician's opinion that plaintiff was "totally" disabled where opinion was rendered in worker's compensation claim context)); *see also Lefever v. Astrue*, No. 5:07–CV–622 (NAM/DEP), 2010 WL 3909487 at *13 (N.D.N.Y. Sept. 30, 2010) ("Workers' compensation determinations are directed to the workers' prior employment and measure the ability to perform that employment rather than using the definition of disability in the Social Security Act. Because disability for purposes of workers' compensation benefits is determined under a different standard than the standard used in the Social Security context, the ALJ is not bound to afford [the treating physician's] finding controlling weight."), *aff'd*, 443 Fed. App'x 608 (2d Cir. 2011). Thus, the ALJ did not err in declining to afford Dr. Rule's opinions controlling weight, as they were

---

[5]It is unclear who actually prepared the workers compensation forms, as they bear both Dr. Rule and NP Demott's signatures.

rendered under different standards and based on Dr. Rule's limited treatment relationship with the plaintiff.

If the opinion of a treating physician is either absent or deemed not controlling, the ALJ must weigh all the medical and other evidence in the record. *See* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). Here, the record contains a January 16, 2015 opinion prepared by consultative examiner Gilbert Jenouri, M.D. (T. 513-16). Upon physical examination, Dr. Jenouri noted that plaintiff appeared to be in no acute distress, with a normal gait and stance. (T. 514). Plaintiff was able to change for the exam, get on and off the table, and rise from his chair without difficulty. (*Id.*). Dr. Jenouri further noted that plaintiff's squat was "only 50% of full," and he was unable to walk on his toes without difficulty. (*Id.*). Plaintiff displayed full range of motion in his cervical spine, knees, ankles, shoulders, elbows, forearms and wrists. (T. 514-15). With respect to his lumbar spine, plaintiff showed "extension 10 degrees, flexion 30 degrees, lateral flexion 25 degrees bilaterally, and rotary movement 25 degrees bilaterally." (T. 514-15). Dr. Jenouri noted a positive straight leg raise test on the left. (T. 515). Plaintiff exhibited full strength in his upper and lower extremities. (*Id.*).

In addition to the physical examination, Dr. Jenouri reviewed an x-ray report of plaintiff's lumbar spine, noting an old compression fracture and degenerative changes. (*Id.*). Based on his physical examination and record review, Dr. Jenouri opined that plaintiff had a "mild restriction for walking, standing, and sitting for long periods, bending, climbing, lifting and carrying." (*Id.*).

The ALJ considered Dr. Jenouri's opinion at length. (T. 16). Based on Dr.

Jenouri's program expertise, his opportunity to personally examine plaintiff, and his opinion's consistency with the record as a whole, the ALJ afforded it "great weight." (T. 16).

Plaintiff contends that Dr. Jenouri's opinion does not provide substantial evidence supporting the ALJ's determination, because it is impermissibly vague. (Plt.'s Br. at 10). "To be sure, a consultative examiner's report which concludes that a plaintiff's condition is "mild" or "moderate," without additional information, does not allow an ALJ to infer that a plaintiff is capable of performing the exertional requirements of work." *Pealo v. Comm'r of Soc. Sec.*, No. 3:17-CV-0149 (GTS/WBC), 2017 WL 5891772, at *5 (N.D.N.Y. Oct. 30, 2017); *see Curry v. Apfel*, 209 F.3d 117, 123 (2d Cir. 2000) (The consultative examiner's "use of the terms 'moderate' and 'mild,' without additional information, does not permit the ALJ, a layperson notwithstanding her considerable and constant exposure to medical evidence, to make the necessary inference that [the plaintiff] can perform the exertional requirements of sedentary work."), *superceded by regulation on other grounds by*, 20 C.F.R. § 404.1560(c)(2)); *see also Bartrum v. Astrue*, 32 F. Supp. 3d 320, 331 (N.D.N.Y. 2012). However, the courts in this district have consistently held that a consultative examiner's opinion which utilizes such vague terminology may not be rendered useless, where the conclusion is "well supported by [the examiner's] extensive examination[,]" or where the vague language may be rendered "more concrete" by the facts in the underlying opinion and other opinion evidence in the record. *Pealo,* 2017 WL 5891772, at *3-4 (other citations omitted); *see also Genito v. Comm'r of Soc. Sec.*,

No. 7:16-CV-0143 (GTS), 2017 WL 1318002, at *8 (N.D.N.Y. April 7, 2017).

Admittedly, Dr. Jenouri's opinion is vague to the extent it qualifies plaintiff's limitations as "mild." (T. 515). Nevertheless, Dr. Jenouri's findings regarding plaintiff's functional restrictions are *"well supported by [his] extensive examination[,]"* as previously set forth. *Waldau v. Astrue*, No. 5:11-CV-925 (GLS), 2012 WL 6681262, at *4 (N.D.N.Y. Dec. 21, 2012) (citing *Armstrong v. Commissioner of Soc. Sec.*, No. 05-CV-1285 (GLS/DRH), 2008 WL 2224943, at *4, n. 6 (N.D.N.Y. May 27, 2008)).

Moreover, the record as a whole, including treatment records, radiology reports, and plaintiff's activities of daily living, lend further credibility to Dr. Jenouri's opinion and provide substantial evidence supporting the ALJ's RFC determination. *See Pealo*, 2017 WL 5891772 at *5 *(citing Davis v. Massanari*, No. 00-CV-4330, 2001 WL 1524495, at *8 (S.D.N.Y. Nov. 29, 2001) (a consultative examiner's opinion was not too vague where "the facts underlying that opinion and the other medical opinions in the record lend it a more concrete meaning"); *Colvin v. Comm'r of Soc. Sec.*, No. 3:15-CV-1033 (GTS/WBC), 2017 WL 9487187, at *8 (N.D.N.Y. Feb. 27, 2017) (ALJ determination that plaintiff retained the RFC to perform light work was supported by substantial evidence in the record, including consultative examination opinion that plaintiff had mild to moderate limitations for sitting, standing and walking; unremarkable treatment records; and plaintiff's testimony regarding his activities of daily living).

The objective medical evidence of record from the relevant time period, when

considered as a whole, reflects generally unremarkable findings upon examination with respect to plaintiff's lower back. Although plaintiff exhibited tenderness to his lower back upon examination (T. 488, 507, 509, 662, 666, 682), he appeared to be in no apparent distress, with normal gait and range of motion. (T. 486, 508, 512, 658, 662, 678). Dr. Rule indicated that, during the one examination he performed, plaintiff exhibited abnormal muscle tone with "some apparent weakness in the left lower leg," however he displayed normal reflexes and coordination. (T. 666). Otherwise, the results of plaintiff's September 15, 2015 MRI scan ordered by Dr. Rule indicated "multilevel spondylosis . . . contribut[ing] to multilevel neural foraminal stenosis at T11-12 and from L2-L3 through L5-S1 which is likely *greatest in degree at the L4-L5 level where it is mild in degree bilaterally.* There is no definite significant central spinal stenosis in the lumbar spine." (T. 672-74) (emphasis added). These objective medical findings align with Dr. Jenouri's opinion for "mild limitations," and do not contradict the ALJ's ultimate determination that plaintiff could perform light work as modified.

The ALJ properly took plaintiff's subjective complaints and testimony into consideration in forming his RFC. In particular, the ALJ considered plaintiff's representation that he could not sit or stand for more than 20 to 30 minutes at a time. (T. 276-77). In conjunction with the mild limitations opined by Dr. Jenouri, in the ALJ determined that plaintiff could sit for up to six hours in an eight-hour day and stand for up to six hours in an eight-hour day, provided he is given the opportunity to alternate three times per hour from a seated to standing position for five minutes, while

remaining on task. (T. 14). The ALJ did not err in formulating the RFC in this fashion, as it was supported by medical opinions, treatment records, and the testimony of the plaintiff. *Palistrant v. Comm'r of Soc. Sec.*, No. 16-CV-588, 2018 WL 4681622 (W.D.N.Y. Sept. 28, 2018) (holding that claimant's testimony that he had to alternate between sitting and standing every 20-30 minutes and general treatment notes about sitting and standing limitations supported RFC that the claimant be able to alternate between sitting and standing every half hour); *Bryant v. Berryhill*, No. 16-CV-6103, 2017 WL 2334890, at *4 (W.D.N.Y. May 30, 2017) (holding that "several references in the record," including the claimant's conflicting reports about the length of time he could sit or stand—some indicating 10 to 15 minutes at a time and others indicating 30 minutes at a time—allowed the ALJ to "reasonably conclude[ ] that [claimant] could sit for 30 minutes and stand for 15 minutes").

In addition to the objective medical evidence and plaintiff's subjective complaints, the ALJ considered plaintiff's ADLs. The ALJ's RFC determination was consistent with plaintiff's ADLs, considering that plaintiff cooked everyday, cleaned three times per week, did laundry twice a week and shopped when needed. (T. 16). Plaintiff retained the ability to socialize with friends, perform minor household repairs, operate a tractor for plowing and mowing, and take his two large dogs to the dog park every day. (T. 16, 274-75). The ALJ properly relied on plaintiff's activities as a factor in his overall evaluation of the medical opinion evidence and in formulating plaintiff's RFC. *See Cummings v. Comm. of Soc. Sec*., No. 3:17-CV-0631 (WBC), 2018 WL 2209204, at *8 (N.D.N.Y. May 14, 2018) (citing *Krull v. Colvin*, 669 Fed. App'x 31,

32 (2d Cir. 2016) (ALJ relied, in part, on plaintiff's activities of daily living, such as caring for grandchildren and ability to use a computer, in assessing plaintiff's mental RFC)); see also *Cichocki v. Astrue*, 729 F.3d 172, 178 (2d Cir. 2013) (ALJ properly considered the plaintiff's varied daily activities in formulating the RFC).

Ultimately, Dr. Jenouri's assessment of "mild limitations" in plaintiff's ability to sit, stand and walk for long periods is consistent with an RFC for light work. *Lewis v. Colvin*, 548 F. App'x 675, 677–78 (2d Cir. 2013) ("[T]he ALJ's determination that [plaintiff] could perform 'light work' is supported by [the consulting physician's] assessment of mild limitations for prolonged sitting, standing and walking, and direction that [plaintiff] should avoid heavy lifting and carrying."). Although some evidence in the record might support the conclusion that plaintiff had greater limitations than those the ALJ incorporated into his RFC determination, that is not the test. If, as is the case here, "the reviewing court finds substantial evidence to support the Commissioner's final decision, that decision must be upheld, even if substantial evidence supporting the claimant's position also exists." *Rivera v. Comm'r of Soc. Sec.,* 368 F. Supp. 3d 626, 649 (S.D.N.Y. Mar. 15, 2019) (citing *Johnson v. Astrue*, 563 F. Supp. 2d 444, 454 (S.D.N.Y. 2008)). In sum, the ALJ applied the correct legal standards and marshaled substantial evidence to conclude that plaintiff could perform a modified range of light work.

**WHEREFORE**, based on the above, it is

**ORDERED**, that the Commissioner's decision is **AFFIRMED** and the complaint is **DISMISSED**, and it is

**ORDERED**, that judgment be entered for **DEFENDANT**.


Dated: January 13, 2020

Hon. Andrew T. Baxter
U.S. Magistrate Judge